WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Charles A. Laya, | ) |
| Plaintiff, | ) CV 06-458 TUC DCB |
| v. | ) |
| Pima County, Arizona, et al., | ) **ORDER** |
| Defendants. | ) |

<u>Motion for Reconsideration</u>

On July 22, 2009, the Court granted summary judgment for Defendants Pima County and Sherif Dupnik and entered Judgment accordingly. On August 5, 2009, Plaintiff filed a Motion for Reconsideration. He asks the Court to consider a supplemental opinion from his expert, which was prepared after the recently taken depositions of Martha Cramer, Captain Hendrickson and Daniel Brown. Martha Cramer was the Bureau Chief supervising the jail during the time Laya was assaulted by Hayes.

These individuals were deposed subsequent to Plaintiff's Response to the Defendants' Motion for Summary Judgment. Martha Cramer was the last deposed; she was deposed on June 16, 2009. The Court ruled on the Motion for Summary Judgment on July 22, 2009. The Second Supplemental Expert Report was prepared subsequent to Cramer's deposition, but most likely before the Court's ruling on the Motion for Summary Judgment. The Report is not dated. Assuming the Report was prepared prior to the Court's ruling, Plaintiff should have sought to supplement his Response to the Defendants' Motion for Summary Judgment instead of seeking admission of this evidence by Motion for

Reconsideration. Nevertheless, the Court will consider the Second Supplemental Expert Report as newly discovered evidence for purposes of ruling on the Motion to Reconsider.

## Standard of Review

Motions to reconsider are generally treated as motions to alter or amend the judgment under Federal Rules of Civil Procedure ("Rule") 59(e). *See In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 542 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986). A motion to amend a judgment based on arguments that could have been raised, but were not raised, before judgment was entered may not properly be granted. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2810.1 at 127-28; *Demasse v. ITT Corporation*, 915 F. Supp. 1040, 1048 (Ariz. 1995) (a Rule 59(e) motion may not be used to raise arguments or present evidence that could have been raised or presented prior to judgment); *Williams v. Poulos*, 11 F.3d 271, 289 (1st Cir. 1993) (proper to deny Rule 59(e) request for relief not requested in amended complaint).

Specific grounds for a motion to amend or alter are not listed in the rule, but generally there are four basic grounds for a Rule 59(e) motion: 1) the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence; 3) the motion will be granted if necessary to prevent manifest injustice, such as serious misconduct of counsel may justify relief under this theory, and 4) a motion may be justified by an intervening change in controlling law. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2810.1 (citations omitted).

Alternatively, a court can construe a motion to reconsider as a Rule 60 motion for relief from a judgment or order. Under Rule 60, a party can obtain relief from a court order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move

2

for a new trial under Rule 59(b); (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b).

Consequently, motions to reconsider are appropriate only in rare circumstances to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (1986). A motion for reconsideration should not be used to ask a court "to rethink what the court had already thought through--rightly or wrongly". *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *cf., Agric. Research & Tech. Group,* 916 F.2d at 542. Arguments that a court was in error on the issues it considered should be directed to the court of appeals. *See Refrigeration Sales Co. v. Mitchell-Jackson, Inc.,* 605 F. Supp. 6, 7 (N.D. Ill. 1983).

### Analysis: Second Supplemental Expert Report

Plaintiff's expert considered the following issue: "Did the Sheriff's custom and practice of not supervising, scrutinizing or evaluating the performance of his constitutional duty in administering and operating the Pima County Jail constitute deliberate indifference?" (Motion to Reconsider, Ex. A: Second Supplemental Report (2nd Supp. Report) at 5.) It was his expert opinion, "Sheriff Dupnik has demonstrated a custom and practice of 'willful and deliberate indifference' to the operation and administration of the Pima County Jail." *Id.* He concluded that because of failures on the part of the Sheriff, the classification system failed to protect the inmates by making fundamental separations between violent and non-violent inmates. This failure to [sic] ultimately led to the assault that culminated in catastrophic consequences for Charles Laya." *Id.* at 10.

The newly submitted evidence fails to change this Court's finding that in this case, the allegedly faulty classification system did not cause Plaintiff's injury because he was admittedly a violent inmate confined with, and injured by, a violent inmate. This would be

3

a very different case were there any evidence that Laya was a non-violent inmate wrongly confined with and assaulted by a violent inmate due to the classification system.

As to the Second Supplemental Expert Report, it offers little in the way of specifics related to Plaintiff's allegations that the lack of oversight caused Correction Officers (COs) to disregard prison policies and procedures, including prisoner transfer policies related to inmate safety. To the extent the Report supports such a conclusion under *Canton's* objective test of "must have known," the Plaintiff must show that COs violated Laya's constitutional rights. *See* (Order filed July 22, 2009, at 18-20.)

Plaintiff and Hayes were housed together in pod 3A by April 21, 2005. The assault was 17 days later on May 8, 2005. Plaintiff testified regarding his "little campaign" . . . "to get out of there." *See* (Response, SOF, Ex. 12: Laya Depo. at 54.) First, without naming anyone, he just told "them" that he wanted to know how to go about getting moved. *Id.* Plaintiff identified CO Dalbey as the one who described the specifics for how to file a "kite" to request a move. *Id.* 54-55.

After talking to CO Dalbey, Laya discussed the idea of asking to be moved because he was having a problem with another inmate, but the inmate suggested that he should just handle the problem himself. Plaintiff rejected this idea because he believed it would just make matters worse. *Id.* at 58.

Plaintiff "stewed" on the idea of what to do for a while– for a few days. *Id.* at 62. Next, Plaintiff asserts he told Vareles[1] that he needed to be moved. When CO Vareles inquired as to why Plaintiff wanted to move, Plaintiff tried to tell him without naming any names. Plaintiff explained that in prison or jail, "you don't write them down," "you don't say them." "Because if a trustee or something saw a kite coming cross a sergeant's desk or something, or just got a notice of it and saw your name on it with another person's name, that

---

[1] In the transcript, CO Vareles' name is phonetically spelled Berraras and Ferraras.

4

could have serious consequences." So, Plaintiff just kind of leaned towards the basketball player/surfer dude and said he was going to have problems. CO Vareles caught on because he responded with Hayes' name. *Id.* at 65-66.

CO Vareles told the Plaintiff to put in a kite and request to speak to Dalbey or another sergeant. *Id.* at 65-66. CO Vareles said he would hand-deliver the kite to the sergeant. *Id.* at 66. CO Vareles gave the Plaintiff a "kite." *Id.* at 67. Plaintiff went to a pod table and filled it out. *Id.* Plaintiff wrote on the kite that "he was going to have problems with another inmate and needed to be moved ASAP." *Id.* at 68.

Plaintiff testified that he filled out the first kite several days before the assault. *Id.* at 69. Days later, Plaintiff heard that another inmate had eavesdropped on a phone conversation he was having with his girlfriend, who had the same name as Haye's mother, and the inmate told Hayes that the Plaintiff was talking about Haye's mom. *Id.* Laya put in maybe three or four more kites to the sergeant. *Id.* at 74. On each he wrote, "I'm going to have problems with an inmate and, I need to be moved ASAP." *Id.* at 77. None of the kites have been located.

According to Laya, Varelas and Dalbey were the ones that [he] specifically let know what [his] problem was, without really coming out and saying it. They understood. They knew. They'd been there for a while. They knew the unspoken rules of how inmate life worked and, you know, they knew." *Id.* at 75. "They probably – may or may not have known who the person was, but – " As to the other CO s, the Plaintiff only told them he was going to have a problem and needed to get moved. The standard response he recieved was, "I don't make lateral movements." *Id.*

Plaintiff fails to allege facts sufficient to support a claim that COs were deliberately indifferent to his safety. Plaintiff was filing kites to secure a lateral transfer. This is not the same thing as requesting a transfer to administrative segregation for his own protection. It is understandable that he may not have wanted to invoke such a request because the Inmate

5

Manual describes Administrative Segregation as being housed separately from general population inmates, under strict supervision in a highly structured and controlled housing unit if you are a risk to the safety, security and good order of the jail, the safety of staff or other inmates, or for your safety." (Motion for Summary Judgment (MSJ), Statement of Facts (SOF), Ex. 5: Inmate Manual at 29.)

To have been deliberately indifferent to Plaintiff's safety needs, the COs would have to actually have known that he wanted and needed for his own safety to be transferred to Administrative Segregation, and then deliberately refused to make the transfer. *See* (Order filed July 22, 2009, at 17 (citations omitted)). Here, the evidence is that the Plaintiff did not seek an immediate transfer from general population level 3 housing to level 4 Administrative Segregation for his own protection, but instead wanted a lateral transfer ASAP because he was going to have a problem. Under these circumstances, especially since there were only 17 days he was housed in pod 3A before the assault, failing to move the Plaintiff "immediately" does not meet the stringent standard of fault required for a constitutional violation.

Even if the Court assumes, as it did when it granted summary judgment for Defendants, that COs violated Plaintiff's constitutional rights, there is no evidence to support a claim of deliberate indifference under the *Canton* standard where a need to act is obvious because any reasonable person would recognize it. The Supplemental Expert Report records the needed oversight Sheriff Dupnik allegedly failed to take as follows: 1) delegate responsibility for the development of policies and systems to persons with correctional knowledge or background; 2) to select qualified personnel for the critical position of corrections chief to implement and administer polices and systems; 3) to train those selected for the position of corrections chief or provide the corrections chief with minimal instructions, guidelines, or direction for accomplishing his or her duties; 4) to supervise these persons; 5) to be involved in developing policies, systems and procedures for operation of

6

the jail; 6) demonstrate minimal regard or interest in correctional operations as shown by failing to conduct any inspection of the jail, and 7) to audit policies and systems to ensure they meet statutory obligations. Plaintiff's expert concludes that these failures in oversight resulted in a classification system that failed to protect inmates. (Motion to Reconsider, Ex. A: 2nd Supp. Report at 10.)

Framed in terms of *Canton*, oversight was needed in regard to delegating development of policies and systems to persons with correctional knowledge or background, selecting qualified personnel for the critical position of corrections chief, training, supervising, and providing direction to the corrections chief, being involved and interested in developing policies, systems and procedures for operating the jail, including conducting jail inspections, and auditing policies and systems. These oversight provisions were necessary to ensure that the classification system protected the safety interests of the inmates.

The Court cannot find that any reasonable person would recognize the need for these oversight provisions to prevent COs from totally disregarding all jail policies and procedures, including those for inmate safety. The Plaintiff's own expert has not even mentioned it. Surely, if this was an obvious result it would have been identified and addressed by Plaintiff's own expert. Like the prior expert opinions, the Second Supplemental Report addresses the need for more oversight within the context of developing a classification system to prevent inmate on inmate violence.

## Conclusion

The Court has reviewed its Order in light of the Second Supplemental Expert Report compiled after the deposition Chief Cramer and Captain Hendrickson and Daniel Brown. The facts and circumstances which caused this Court to rule against Plaintiff have not

/////

changed in spite of these depositions and the Second Supplemental Expert Report. There is no manifest error of law in the Court's July 22, 2009, Order. There is no basis under Rule 59 or Rule 60 for reconsideration.

**Accordingly,**

**IT IS ORDERED** that the Motion for Reconsideration (document 241) is DENIED.

DATED this 11th day of August, 2009.

David C. Bury
United States District Judge